**Craig Houston McCLAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Charles Vincent NAVARRO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 699–84—McClain, 700–84—Navarro.**

Court of Criminal Appeals of Texas, En Banc.

April 3, 1985.

John B. Holmes, Jr., D.A. & J. Harvey Hudson & Veryl Brown, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

These are appeals from convictions for the offense of theft[1] in which the punishment for each appellant was assessed at three years and a $500.00 fine, probated.

In an unpublished opinion the Houston (1st) Court of Appeals found the evidence insufficient and ordered each appellant acquitted. We will review the basis in law for its finding.

The salient stipulated facts established Houston Police Officer S.R. Jett received information from Kevin Stuart, a Harris County Jail inmate, regarding appellants and their business operation, Gulf Coast Coins. Pursuant to this information, Jett checked out of the police department property room some personalty, including ten gold chains.

Pursuant to Jett's instructions, Stuart took the property to appellants' place of business, gave it to defendant Navarro and "had a discussion with him about selling the property to the codefendants at Gulf Coast Coins." Stuart told Navarro that he had personally stolen the property. Stuart later spoke to defendant McClain, whom he told, "I risked my butt stealing this stuff and should get a better price." McClain gave Stuart $140.00. Stuart left the property with appellants.

The State alleged by indictment that each appellant did:

"... on or about April 5, 1983, ... unlawfully appropriate by acquiring and otherwise exercising control over proper-

---

1. V.T.C.A. Penal Code, Section 31.03, [hereafter "§ 31.03"] provides in relevant part:

 "(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property.

 (b) Appropriation of property is unlawful if:

 (1) it is without the owner's effective consent; or

 (2) the property is stolen and the actor appropriates the property knowing it was stolen by another."

ty, namely, ten gold chains, owned by S.R. Jett, hereafter styled the Complainant, of the value of over two hundred dollars and under ten thousand dollars, with the intent to deprive the Complainant of the property, and without the effective consent of the Complainant.

\* \* \* "

Addressing appellants' contentions that the evidence was insufficient to support the trial court's findings of guilt, the court of appeals observed:

"... [T]heft under Sec. 31.03(b)(1) requires 'that the accused participate, either personally or acting as a party, in the initial unlawful appropriation of the property from its owner.' *Casey v. State,* 633 S.W.2d 885 (Tex.Crim.App. 1982). In *Casey,* the Court instructed:

'If the accused does not take part in the initial unlawful appropriation but he does later acquire or exercise control over the previously stolen property knowing that it was stolen by another he is guilty only of theft under Sec. 31.03(b)(2). Such an interpretation of these sections is required by common sense and logic; any other interpretation of Sec. 31.03(b)(1) would allow conviction for non-criminal conduct.'

633 S.W.2d at 887.

The stipulated evidence in the instant case establishes that the appellants had no participation in the 'initial unlawful appropriation' (if there was one) of this property; indeed, the stipulations explicitly state that the 'original owner of the ten gold chains and the exact facts regarding the original acquisition or appropriation of these ten gold chains is unknown to any witness in this [sic] cases.' "

We granted the State's petition for discretionary review in order to address the contention that the reasoning underlying *Casey* is unsound and should be overruled.[2]

The court of appeals has undoubtedly applied *Casey* correctly to the instant cases. We now turn to the question presented: whether *Casey* was correctly decided.

The panel opinion in *Casey* construed our present theft statute to proscribe only "two distinct" types of conduct—what would have essentially constituted "theft" and "receiving and concealing" under old Articles 1410[3] and 1430[4] Vernon's Ann.P.C. (1925), respectively—focusing primarily on the manner in which the actor *acquired* the property. Pursuant to that construction, *Casey* held that § 31.03(a) with (b)(1)[5]

"requires [in addition to the express elements of the offense,] that the accused *participate,* either personally or acting as a party *in the initial* unlawful [*actual taking*][6] *of the property from its owner.* See *Cooper v. State,* 537 S.W.2d 940 (Tex.Cr.App.1976)."

*Casey,* supra, at 887.

Having reviewed the stated rationale of *Casey,* we conclude its addition of an element in some cases—"participation in the

---

**2.** In the alternative, the State contends that if *Casey* is determined to be correct the State should not be precluded from retrying appellants under § 31.03(a) and (b)(2) because *Casey* treats these provisions as proscribing a separate and distinct theft offense from the one prosecuted in the instant case under § 31.03(a) and (b)(1). Though we also granted review on this ground our disposition of the first ground renders its treatment unnecessary.

**3.** " 'Theft' is the fraudulent *taking of* corporeal personal *property* belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." (All em-

phasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**4.** "Whoever shall *receive* or conceal *property* which has been *acquired by another* in such a manner as that the acquisition comes within the meaning of the term theft, *knowing the same to have been so acquired* shall be punished in the same manner as if he had stolen the property."

**5.** See n. 1 for recitation of the proscription against theft.

**6.** Though *Casey* used the word "appropriation," one only need go to the case then cited, *Cooper v. State,* 537 S.W.2d 940 (Tex.Cr.App.1976), to see the intended meaning was "actual taking."

initial acquisition"—to the constituents of theft as proscribed by the Legislature in § 31.03(a), is untenable.

 The error of *Casey* is most graphically demonstrated in cases where the circumstances of the appellant's acquisition of the property are unknown and unprovable. E.g., *Mulchahey v. State,* 574 S.W.2d 112 (Tex.Cr.App.1978). What was shown in *Mulchahey,* supra, was *an exercise of control over* several vehicles by the defendant, coupled with knowledge he did not have the respective owners' consent and his intent to deprive the owners of the vehicles—just what the theft statute prohibits. V.T.C.A. Penal Code, § 31.03(a).[7] Mulchahey's claim on appeal—that the State proved neither that he initially took the vehicles nor that he knew they were stolen when he acquired them—was rejected on the basis that the proscribing statute does not require such proof. Clearly, the evidence established Mulchahey committed a theft as contemplated by § 31.03(a).

The error of *Casey* is precipitated by its focus on the "manner of acquisition" of personal property, a focus the Legislature

removed entirely from the theft statute in the 1974 penal code,[8] then further refined in the 1975 legislative session.[9] Just as it has been in the past recognized that the actor's intent to "benefit himself or another" or to "withhold the property permanently" are not essential to commission of a theft, so too has it now been acknowledged that the "manner of acquisition" is inconsequential to the evil of a theft: the gravamen of theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property,* without his consent.

Thus, the varying misleading emphases on aspects of acquisitive conduct proscribed under former penal codes were sifted out by the new, and a single offense was distilled from the common elements contained in each: clearly, if one exercises control over property knowing it is without the owner's consent, and intending to deprive the owner of it, it matters not "how" the actor got the property, whether he intended to benefit himself or another, intended "permanently" to deprive the owner, etc.[10]

---

7. There is a continuing misconception among the bench and bar that the word "appropriate" means (or at least connotes) some sort of "taking" or "transfer" of property (other than real property). It does not. "Appropriate" means *any* "exercise of control over" the personalty in question; it is more akin to "possession" than to a "transfer" under the 1974 penal code. See § 31.01(5)(B).

8. The unlawful manner of acquisition of property was tacitly acknowledged to be the gravamen of *other* offenses such as robbery and burglary where obtaining property by force, violence or unlawful entry was seen to be the primary evil sought to be prevented, and thus the focus of those crimes.

9. The original form of § 31.03(a) and (b) made a distinction between two types of alternative "forbidden conduct" elements of theft: "obtains" and "exercises control over" property. Both of these alternatives were removed by the 1975 amendment which substituted the single forbidden conduct element "appropriates." The definition of "obtain" contained originally in § 31.01(5) became part of the definition of "appropriate," amending the same provision in 1975, effective September 1, 1975. *Casey* neglected this clear manifestation of the Legisla-

ture's intent to remove the "manner of acquisition" from the offense of theft.

10. Wholly ignored by the *Casey* panel is the unambiguous declaration by the Legislature that "theft constitutes a single offense superceding the separate offenses previously known as [among others] theft ... and receiving or concealing stolen property." V.T.C.A. Penal Code, § 31.02.

Section 31.02—like 31.01 and 31.03—was adopted in 1973 as proposed by the State Bar Committee on Revision of the Penal Code, final Draft 1970. That Committee explained its intent in consolidating all theft offenses in § 31.-02:

"No part of the penal code has produced more confusion, more appellate litigation, and more reversals on [matters] *unrelated to the actor's guilt or innocence* than the multitude of offenses proscribing criminal acquisitions of another's property. Although the theft offenses attempt to separate guilty from innocent acquisitions, ... their effect all too often is to embroil the courts in nice questions about the appropriateness of conviction under *one offense label as opposed to another. The present distinctions ... are unnecessary for establishing the point at which acquisitive conduct becomes criminal ...*; they do, however,

One of the single biggest problems faced by prosecutors under the old theft statutes was in proving "receiving and concealing" cases because the proof turned on whether the accused had knowledge of a circumstance surrounding his "receipt" of the property—that being that the property was stolen. Since this scienter is one not inferable from the act of "receipt" of the property alone, there was often no way to convict "fences" or other persons dealing in stolen goods, *even if the proof clearly established a knowing nonconsensual possession of the property to the exclusion of the true owner with the intent to deprive the owner of the property.*

Thus, there were at least two eventual innovations in the new code designed specifically to assist in prosecuting such persons: (1) the "exercise of control" feature of "appropriation" which dispensed with the necessity of a "receipt" of property and, perforce, knowledge it was stolen at that very moment;[11] and (2) in the event the prosecution *could* prove the actor had participated in numerous similar receipts of property which, in fact, was stolen, § 31.-03(c)(1) allowed proof of those transactions to show knowledge of stolen status of the property. See also V.T.C.A. Penal Code, 31.03(c)(2)-(4).

*"Few* property transactions *do not* involve the acquisition of another's property

with intent to deprive him of it," Committee Comment to § 31.03. Thus, the committee (and later the Legislature) recognized that what separates lawful acquisitive conduct from theft is knowledge of a crucial "circumstance surrounding the conduct"[12]—that the acquisition is "without the owner's consent." The crime of theft requires the "forbidden conduct" element of the offense[13] ("exercise of control over property") to be accompanied by this "circumstance surrounding the conduct," and V.T.C.A. Penal Code, § 6.03(b), requires proof of the actor's knowledge of that "circumstance surrounding the conduct:" that the conduct is "without the owner's consent." With this crucial feature, the actor's acquisitive conduct is clearly "unlawful." See *Lugo-Lugo v. State,* 650 S.W.2d 72 (Tex.Cr.App.1983) (Opinion concurring on state's motion for rehearing).[14]

It is logically apparent that *one way* to prove the actor had "knowledge" that his exercise of control over property was "without the owner's consent" is to prove that at some point during his exercise of control he "knew it was stolen by another."[15] Thus, knowing the property possessed "was stolen by another" is merely a subset of knowing the possession is "without the owner's consent." *Casey,* however,

---

place unnecessary obstacles before conviction of the guilty.

For these reasons, the committee decided to consolidate most theft offenses into a single, comprehensive offense *aimed at the harm that accompanies the acquisitive conduct, however, the acquisition is accomplished.* * * Theft is a single offense with a uniform culpable mental state, a uniform result, uniform penalties, and uniform defenses, *all of which focus on culpability rather than, as under present law, whether the State is pursuing the defendant under the appropriate offense label.*" Texas Penal Code: A Proposed Revision, Final Draft 1970, Committee Comment to § 31.02 [hereinafter Committee Comment].

11. "['Exercising control'] covers not only purse snatching, shoplifting, and other thefts by strangers, but also receiving or concealing stolen property and the conduct of persons

who possess another's property with consent but exercise their possessory rights in a manner that deprives the owner of the property." Committee Comment to § 31.03.

12. See V.T.C.A. Penal Code, § 6.03.

13. V.T.C.A. Penal Code, § 1.07.

14. Consideration of the operation of § 6.03, as explicated in *Lugo-Lugo,* supra, reveals the concern of the *Casey* panel—that its interpretation is the only thing standing between convicting innocent persons of theft—to be totally unfounded.

15. It simply cannot be argued with any logic that a person who exercises control over property he knows was stolen by another *does not know* his exercise is without the true owner's consent.

treated these "circumstances surrounding the conduct" as mutually exclusive.[16]

Not only is such a treatment patently illogical in fact, but it also conflicts with the express legislative history of the statute:

> "Section 31.03(b)(2) provides that it is 'unlawful' to ... exercise control over property the owner [sic] knows is stolen; thus the receiver is guilty of theft under Section 31.03. 'Receiving' is included out of an abundance of caution rather than out of necessity, because one who obtains or exercises control over property he knows is stolen does so [knowing it is] without the owner's effective consent as clearly as when he physically steals the property himself."

Committee Comment to § 31.03.

 Thus, it is clear that the general allegation that the conduct and accompanying mental state (appropriation with the intent to deprive) were done "unlawfully," or even "without the owner's consent," would support a conviction for theft in which the proof established the actor's "initial taking," his "receipt knowing the property was stolen" or neither such mode of acquisition, so long as all elements of theft were proved. Section 31.03(b)(1) and (2) simply do not provide the "nature of the forbidden conduct;" instead, they are both only *"circumstances surrounding* the conduct," which in no way constitute "acts or omissions" of the defendant. It follows that these provisions have evidentiary import only in terms of establishing the "unlawfulness" of the appropriation, and the defendant is not entitled to have them expressed in the State's charging instrument as a matter of "form" under *Thomas v. State,* 621 S.W.2d 158 (Tex.Cr.App.1981) (Opinion on state's motion for rehearing), much less substance.

In sum, neither the rationale nor holding of *Casey* is supported by logic or legal authority; in fact, *Casey* flies in the face of the Legislature's express purpose in consolidating theft offenses. It attempts to reduce the offense of theft to "two separate and distinct ways in which the offense could be committed" which, with deference, is much too simplistic; there are myriad "ways in which the offense could be committed." But *Casey* attempted to elevate mere matters of proof to "distinct elements" comprising "two separate" offenses, then tacked on a new "element of the offense" ("initial actual taking"). There is certainly no principled reason, compelling or even weak, to revive the very problems the Legislature sought to eliminate in the new penal code, as well as create new ones.

*Casey* is overruled.

This cause is remanded to the court of appeals for determination of appellants' contention that the evidence fails to establish their exercise of control of the affected property was "without the owner's effective consent."

It is so ordered.

MILLER, Judge, concurring.

I join the majority opinion and write only to address the accusation in the dissent by Onion, P.J., that the majority is so caught up in the fever of result orientism that it ignores prior case law "of which it has been made acutely aware."

Just today, in *Roeder v. State,* —— S.W.2d —— (No. 68,887, delivered April 3, 1985), this Court reaffirmed the doctrine of appellate review that mandates review of a sufficiency of the evidence ground in just this situation. When an appellate court

---

**16.** The assertion in *Casey* at 886–887 that "the Legislature while creating only one offense provided two separate and distinct ways in which the offense could be committed" is not only an inherent semantic contradiction, but is also wrong as a matter of reality.

finds that evidence was improperly admitted and considered, we do not entertain a challenge to sufficiency of the remaining evidence. Calling the admission of the tainted evidence "trial error," we remand for a new trial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). However, if in such a situation appellant complains that "all of the evidence, proper and improper, is insufficient to support the conviction," then we must consider that claim vis-a-vis double jeopardy. It is, in fact, our usual practice. *Porier v. State*, 662 S.W.2d 602, 606 (Tex.Cr.App.1984), as cited in *Roeder*, supra.

In the case at bar, appellant complains that all the evidence, including the stipulations, is insufficient to support the verdict. It is of no moment then that the stipulations are fatally defective except that this defect will assure appellant of at least a new trial. However, if the evidence, including the stipulations, is insufficient then the State has had its bite at the apple and appellant is entitled to a verdict of acquittal.

The majority opinion does nothing more than address the premise under which the court of appeals operated in deciding appellant's sufficiency ground, and remands the case for determination of that ground. Appellant is entitled to have that ground addressed because jeopardy is raised, and the State is entitled to have that ground addressed correctly. I am "amazed" that the dissent would attempt to deprive appellant of such a basic tenet of due process as the protection afforded by the double jeopardy provisions of our State and National constitutions.

ONION, Presiding Judge, dissenting.

The question before this Court involves the sufficiency of the evidence to sustain the convictions. Yet an examination of the appellate record quickly reveals the evidence consists entirely of stipulations entered in this trial before the court on the pleas of not guilty. Such stipulations do not comply with the provisions of Article 1.15, V.A.C.C.P. The appellant's waiver of the appearance, confrontation and cross-examination of witnesses and consent to the stipulations has not been approved by the trial court in writing. About this there is no dispute. Such stipulations cannot be considered as evidence. Without evidence the result of the majority's opinion cannot be reached.

Article 1.15, supra, provides:

"... The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such *waiver and consent must be approved by the court in writing,* and be filed in the file of the papers of the cause." (Emphasis supplied.)

Compliance with the statute has long been held mandatory in order for the stipulation to be considered as evidence. *Elder v. State,* 462 S.W.2d 6 (Tex.Cr.App.1971); *Rangel v. State,* 464 S.W.2d 858 (Tex.Cr. App.1971); *Hughes v. State,* 533 S.W.2d 824 (Tex.Cr.App.1976).

In *Rodriquez v. State,* 534 S.W.2d 335 (Tex.Cr.App.1976), it was held that a violation of the mandatory provisions of the statute constitutes reversible error, even if the matter is not raised in trial court or on appeal. The court said: "Fundamental error accompanied the admission of the stipulated evidence. ..."

In *Clark v. State,* 657 S.W.2d 121 (Tex. Cr.App.1983), this Court, en banc, in an unanimous opinion, speaking through Judge Tom Davis stated:

"This court has *consistently* held that compliance with this statute is mandatory, in the trial before the court, regardless of the plea, for a stipulation to be considered evidence. *Young v. State,* 648 S.W.2d 6 (Tex.Cr.App.1983); *Valdez*

*v. State*, 555 S.W.2d 463 (Tex.Cr.App. 1977).

"In this case the trial court did not consent to and approve the stipulation by affixing his signature to it. The failure of the court to comply with the requirements of Article 1.15, V.A.C.C.P. necessitates reversal of the judgment. Since this was a trial error an acquittal will not be entered. *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App.1979)." (Emphasis supplied.)

In *Young* and *Valdez* as in *Clark* and *Ellard v. State*, 650 S.W.2d 840 (Tex.Cr. App.1983), the failure of the court to comply with Article 1.15, supra, called for reversal of the judgment involved. The stipulation could not be considered evidence.

The Courts of Appeals have followed these cases. In *Green v. State*, 666 S.W.2d 291 (Tex.App. [14th Dist.] 1984), it was held that in absence of the trial judge's signature approving the defendant's waiver and consent to the stipulation the stipulation was inadmissible evidence. See also *Lewis v. State*, 647 S.W.2d 753 (Tex.App. [3rd Dist.] 1983).

And only recently on March 20, 1985 this Court refused a State's petition for discretionary review in Cause No. 0723–84 where the Houston [14th] Court of Appeals reversed a murder conviction where the stipulated evidence was not approved by the trial court in writing as required by Article 1.15, supra, although the issue was not raised in the trial court or on appeal. See *Anderson v. State* (Tex.App. [14th Dist.] No. A 14–83–343 CR—May 3, 1984), an unpublished opinion.

The instant case, like those above, involved violation of the mandatory provisions of the statute and constitutes reversible error even if the matter was not raised in the trial court or upon appeal in the Court of Appeals or this Court. *Young v. State*, supra; *Hughes v. State*, supra. See and cf. *Carter v. State*, 656 S.W.2d 468 (Tex.Cr.App.1983).

The majority blithely ignores the undisputed condition of the record and this long line of cases. Perhaps in its eagerness to use this cause and only this cause as a vehicle to reach a desired result now, the majority chooses to close its eyes and turn a deaf ear to that of which it has been made acutely aware.

One may dislike, or even quarrel with the legislative mandate expressed in Article 1.15, supra, but it must be followed so long as it is the law. An appellate judge may not pass this cup from his lips. Article I, § 16, Tex.Const. He cannot ignore facts which bring into play laws he does not personally approve, or disregard certain laws in order to reach a desired result in a particular case.

Today's majority does not mention, or even give a hint that the evidence it utilizes to reach its result is not properly before this Court. This is a situation of deliberate bypass. "Color me amazed" is not an adequate expression of concern here.

I vigorously dissent.

TEAGUE, Judge, dissenting.

The majority expressly overrules *Casey v. State*, 633 S.W.2d 885 (Tex.Cr.App.1982). *Casey*, supra, however, should not be overruled; instead, it should be reaffirmed by this Court. To the action of the majority overruling *Casey*, supra, I respectfully dissent.

The court of appeals, relying upon this Court's well written and well reasoned panel opinion by Judge Dally of *Casey v. State*, supra, reversed the appellants' convictions after it found that the evidence was insufficient because there was no proof under the theory alleged in the indictment that appellants were involved in the initial unlawful appropriation of the property as required by this Court in *Casey v. State*, supra.

In *Casey v. State*, supra, this Court correctly held that when the Legislature enacted the theft statute, it provided that there were two separate and distinct ways that the offense of theft could be committed. One of the ways is to establish that the defendant appropriated property of another without the owner's effective con-

sent. V.T.C.A., Penal Code, Section 31.-03(b)(1). Another way is to establish that the accused, acting with intent to deprive the owner of property, appropriated property, which is stolen property, knowing it was stolen by another. Section 31.03(b)(2). The panel ordered the defendant Casey's conviction reversed because "the indictment allege[d] an offense under Sec. 31.-03(b)(1); however, the evidence establishes only a transfer of stolen property and the evidence fails to show that the appellant was involved in the initial appropriation from the owner." (887).

This cause is almost a xerox copy of what the panel was confronted with in *Casey v. State*, supra. *Casey* controls the disposition that should be made of appellants' contention that the evidence is insufficient to sustain a conviction under Sec. 31.03(b)(1), as was alleged in their respective indictments. The majority, however, erroneously overrules *Casey v. State*, supra.

Almost one hundred years ago, Judge Davidson of this Court in *Castleberry v. State*, 35 Tex.Cr.R. 382, 33 S.W. 875 (Tex. Cr.App.1896), stated the following: "It would be a dangerous doctrine to hold every citizen guilty of receiving stolen property, and send him to the penitentiary, because he was found in possession thereof." (875).

In *Casey v. State*, supra, Judge Dally stated the following: "More importantly to allow the prosecution of cases involving the transfer of stolen property under Sec. 31.-03(b)(1) creates the possibility that an innocent person could be convicted of theft. A good faith purchaser of property, not knowing that the property was stolen, would be knowingly and intentionally exercising control over property with the intent to deprive the owner of the property without the owner's effective consent. To avoid such a possibility Sec. 31.03(b)(2) requires that the accused know that the property was stolen by another." (887).

The warnings that both Judge Davidson and Judge Dally stated are as applicable today as when announced in 1896 and 1982.

I believe that under the majority opinion it will now be permissible for the State to prosecute and convict persons only because they are found in possession of stolen property. This holding flies in the face of what has always been axiomatic in American jurisprudence, namely, that "the mere naked possession of stolen goods, not aided by other proof, is no evidence of the defendant's having received them, knowing them to be stolen." *Castleberry*, supra, 33 S.W. at 875.

The State argues that "this Honorable Court's rationale in Casey is fallacious." (Page 5 of State's Petition for Discretionary Review.) I find that it is the majority opinion, and not this Court's rationale in *Casey*, supra, that is fallacious.

What appears to cause the majority to use the rationale it did in this cause is that it *believes* that "One of the single biggest problems by prosecutors under old theft statutes was in proving 'receiving and concealing' cases because the proof turned on whether the accused had knowledge of a circumstance surrounding his 'receipt' of the property—that being that the property was stolen. Since this scienter is one not inferable from the act of 'receipt' of the property alone, there was often no way to convict 'fences' or other persons dealing in stolen goods, even if the proof clearly established a knowing nonconsensual possession of the property to the exclusion of the true owner with the intent to deprive the owner of the property." Contrary to what the majority might believe, but because of the number of receiving and concealing cases that this Court has in the past affirmed, see the cases collated under Texas Digest Criminal Law Key 511(4), I do not believe that the State's burden was all that great.

I also find it rather interesting that the majority does not cite a single decision from any other jurisdiction to support its rationale and analysis for the proposition that when the Legislature of this State enacted the theft statute it did not intend to do just exactly what Judge Dally stated

in *Casey v. State,* supra. *Casey,* supra, should be reaffirmed, not overruled.

There is yet another reason why the appellants' convictions should be reversed. All should agree that the trial court committed reversible error in accepting the stipulations of evidence without full compliance with Art. 1.15, V.A.C.C.P. This, however, was only trial error.

In *Foster v. State,* 635 S.W.2d 710 (Tex. Cr.App.1984), this Court held that in making the determination whether the evidence was sufficient, if there was trial error in the improper admission of evidence, the evidence will be reviewed on the assumption that all admitted evidence was properly admitted. As applied in this case, the substance of the appellants' stipulations must be reviewed despite the procedural error in admitting the stipulations.

Therefore, I must also dissent to the majority's failure to discuss the sufficiency of the evidence. See *Howeth v. State,* 645 S.W.2d 787 (Tex.Cr.App.1983).

For all of the above reasons, I respectfully dissent.