TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00297-CR


NO. 03-96-00298-CR







Barkley Williams, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NOS. 18,759 & 18,760, HONORABLE C.W. DUNCAN, JUDGE PRESIDING






PER CURIAM


 Appellant was tried on two indictments accusing him of theft of property having a value of
$750 or more but less than $20,000. Act of May 27, 1985, 69th Leg., R.S., ch. 599, § 1, 1985 Tex. Gen.
Laws 2244, amended by Act of May 10, 1993, 73d Leg., R.S., ch. 203, §§ 4,5, 1993 Tex. Gen. Laws
390, 391-92 (Tex. Penal Code Ann. § 31.03(a), (e)(4)(A), since amended) (hereafter cited as sec. 31.03). 
In each cause, a jury found him guilty and assessed punishment at imprisonment for three years.

 Appellant challenges the legal and factual sufficiency of the evidence to support the
judgments of conviction. In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to the verdict,
any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991);
Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). When conducting a factual sufficiency review,
we do not view the evidence in the light most favorable to the verdict. Instead, we consider all the evidence
equally, including the testimony of defense witnesses and the existence of alternative hypotheses. Orona
v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Clewis v. State 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375,
381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).


No. 3-96-297-CR

 In 1993 when these causes arose, appellant was a sixty-five-year-old retired mechanic
living on a farm outside Cameron. Javis Cavil lived on a neighboring farm. In April 1993, appellant
approached Cavil and expressed an interest in purchasing a tractor, a car, and a truck from Cavil. Cavil
offered to sell the tractor for $2000 and the two vehicles for $400 each. A week later, appellant told Cavil
he could not afford to purchase the items, but offered to sell them on Cavil's behalf. The two men reached
an oral agreement by which appellant would sell the property, pay Cavil the amounts previously mentioned,
and keep any additional money received. In June, the tractor and vehicles were moved to appellant's farm
pursuant to this agreement. In July, Cavil delivered a posthole digger to appellant, also to sell. Cavil
testified that he believed the posthole digger was worth $450. That same month, appellant sold the truck
and gave Cavil $400. In August, Cavil noticed that the posthole digger was no longer at appellant's place. 
Appellant told Cavil the digger had been sold and promised payment, but no payment was forthcoming. 
In September, the tractor was also gone. When contacted by Cavil, appellant again promised payment. 
At some point, appellant's wife told Cavil the tractor had been sold and the money spent. After numerous
unsuccessful efforts to collect his money, Cavil reported these events to the sheriff in November 1993.

 The indictment alleged and the court's charge required the jury to find that appellant
"unlawfully appropriate[d], by acquiring and otherwise exercising control over, property, to-wit: a post hole
digger and a Ford tractor, of the value of $750.00 or more but less than $20,000.00, from JAFUS [sic]
CAVIL, the owner thereof, with intent to deprive the owner of the property." Appropriation of property
is unlawful if it is without the owner's effective consent. Sec. 31.03(b)(1). Consent is not effective if
induced by deception or coercion. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 31.01, 1973 Tex. Gen.
Laws 883, 928 (Tex. Penal Code Ann. § 31.01(4)(A), since renumbered as § 31.01(3)(A)). There was
no evidence of coercion and the State's case obviously rested on the theory that Cavil's consent to
appellant's appropriation of his property was induced by deception.

 There are five definitions of "deception" in the Penal Code, only one of which applies to
the facts in this cause: promising performance that is likely to affect the judgment of another in the
transaction and that the actor does not intend to perform or knows will not be performed. Id., §
31.01(2)(E) (since renumbered as § 31.01(1)(E)). (1) Failure to perform the promise in issue without other
evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the
promise would not be performed. Id.; see Phillips v. State, 640 S.W.2d 293, 294 (Tex. Crim. App.
1982). Viewing the evidence in the light most favorable to the verdict, the State proved that appellant
promised Cavil that he would attempt to sell Cavil's tractor and posthole digger, and if successful, would
pay Cavil $2000 for the tractor and $450 for the digger. The State also proved that appellant sold the two
items and did not pay Cavil as promised. But except for appellant's failure to perform the promise, there
is no evidence that appellant did not intend to perform or knew the promise would not be performed. The
State proved a broken promise, but it did not prove theft.

 Appellant's first point of error is sustained. Because we find the evidence legally insufficient
to sustain the conviction, we do not reach the factual sufficiency point.


No. 3-96-298-CR

 In 1992, appellant sold a tractor (not the tractor at issue in the other cause) to Tom Moore
for $1000. Moore became dissatisfied with the tractor because the exhaust manifold was damaged and
parts were not available to properly repair it. Moore subsequently agreed to sell the tractor back to
appellant for $1000.

 In October 1993, Cecil Pittman told appellant that he was looking for a tractor. Appellant
told Pittman about the Moore tractor and that he was authorized by Moore to sell it, and arranged for
Pittman to examine the tractor at the Moore farm. On October 16, Pittman agreed to purchase the tractor
for $1475 and gave appellant a check for $500 as a down payment. In exchange, appellant agreed to
repair the manifold and deliver the tractor to Pittman, whereupon Pittman would pay the balance of the
purchase price. This agreement was reduced to writing and signed by appellant. Later that month, Pittman
made three additional payments to appellant totaling $275, ostensibly to complete the repairs and pay for
the delivery of the tractor. On each occasion, appellant gave Pittman a receipt indicating that the payment
was applied to the agreed purchase price. Appellant did not deliver the tractor on November 1 as
promised, and additional efforts by Pittman to speak to appellant and to obtain possession of the tractor
were unsuccessful. Pittman went to the sheriff in February 1994.

 The indictment alleged and the court's charge required the jury to find that appellant
"unlawfully appropriate[d], by acquiring and otherwise exercising control over, property, to-wit: U.S.
currency, of the value of $750.00 or more but less than $20,000.00, from CECIL PITTMAN, the owner
thereof, with intent to deprive the owner of the property." As in the other cause, the State's case rested
on the theory that Pittman's consent to appellant's appropriation of his money was induced by deception. 
As in the other cause, the court's charge defined "deception" in the terms of section 31.01(2)(B) and (E),
but only the latter applies to the facts of the case. Unlike the other cause, the State's evidence supports
the jury's verdict.

 Viewing the evidence in the light most favorable to the verdict, appellant promised to sell
Moore's tractor to Pittman for $1475. Appellant also promised to deliver the tractor upon Pittman's
payment of $500 (later increased to $775), with the balance due on delivery. Pittman made the required
down payment, but appellant did not deliver the tractor as promised. Were this the only evidence, we
would agree with appellant that theft was not proven. But there is other evidence that appellant knew his
promise to Pittman would not be performed. Moore testified that he agreed to sell the tractor to appellant
for $1000. He further testified that he did not authorize appellant to sell the tractor to a third party on his
behalf. From this evidence, the jury could reasonably conclude that appellant knew his promise to deliver
the tractor following a down payment of less than $1000 would not be performed. Thus, the evidence is
legally sufficient to prove deception within the meaning of section 31.01(2)(E). (2) Appellant's contention that
the evidence is legally insufficient to prove unlawful appropriation is without merit.

 Appellant also contends that the State failed to prove that he intended to deprive Pittman
of his money. Few property transactions do not involve the acquisition of another's property with intent
to deprive him of it. McClain v. State, 687 S.W.2d 350, 354 (Tex. Crim. App. 1985). What separates
lawful acquisitive conduct from theft is the actor's knowledge that the acquisition is without the owner's
consent. Id. Appellant clearly intended to deprive Pittman of the $775 he paid toward the purchase of the
tractor. The crucial question was whether the State proved that appellant's appropriation of Pittman's
money was unlawful; i.e., without Pittman's effective consent. We have held that it did. Point of error one,
appellant's challenge to the legal sufficiency of the evidence, is overruled.

 We also overrule point of error two, the factual sufficiency point. Appellant testified on
his own behalf. He denied any intent to defraud Pittman, and explained that he failed to deliver the tractor
solely because he did not have the $1000 he needed to purchase the machine from Moore. Rather than
exculpating appellant, this testimony confirmed that appellant knew he could not perform his promise to
Pittman. Contrary to appellant's argument under this point, there is no evidence that Pittman did not fulfill
his side of the agreement. The jury's verdict is not contrary to the great weight and preponderance of the
evidence.

 In cause number 3-96-297-CR, we reverse the judgment of conviction and render a
judgment of acquittal. In cause number 3-96-298-CR, we affirm the judgment of conviction.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered in No. 3-96-297-CR; Affirmed in No. 3-96-298-CR

Filed: April 24, 1997

Do Not Publish

1. The court's charge included this definition and the definition found in section 31.01(2)(B) (failing to
correct a false impression of law or fact). The court did not instruct the jury on the other definitions of
"deception."
2. Moore's testimony may also support a finding that appellant, when he told Pittman that he was
authorized to sell Moore's tractor, created by his words and conduct a false impression of fact that was
likely to affect Pittman's judgment, and that appellant did not believe to be true. Sec. 31.01(2)(A). 
Because this theory of deception was not included in the court's charge, we do not rely on it to sustain the
conviction.


he court's charge required the jury to find that appellant
"unlawfully appropriate[d], by acquiring and otherwise exercising control over, property, to-wit: U.S.
currency, of the value of $750.00 or more but less than $20,000.00, from CECIL PITTMAN, the owner
thereof, with intent to deprive the owner of the property." As in the other cause, the State's case rested
on the theory that Pittman's consent to appellant's appropriation of his money was induced by deception. 
As in the other cause, the court's charge defined "deception" in the terms of section 31.01(2)(B) and (E),
but only the latter applies to the facts of t