

IN THE
TENTH COURT OF APPEALS

No. 10-11-00025-CR

DONALD RAY ARNOLD,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. 30,785-CR

MEMORANDUM OPINION

Donald Ray Arnold was tried in one proceeding for theft of a 1991 Kubota tractor and theft of a 1984 Chevrolet Suburban. He was convicted for both offenses and sentenced to 15 years in prison for each. *See* TEX. PENAL CODE Ann. § 31.03 (West 2011). After receiving an out of time appeal from the Court of Criminal Appeals, Arnold brings the same issue for each offense: the evidence was legally insufficient to support the convictions. We affirm.

The standard enunciated in *Jackson v. Virginia* is the only standard a reviewing court applies in determining whether evidence is sufficient to support each element of a

criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the *Jackson* standard, a reviewing court should not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Blackman v. State*, No. PD-0109-10, 2011 Tex. Crim. App. LEXIS 497, *18 (Tex. Crim. App. April 13, 2011) (quoting *Jackson*, 443 U.S. at 318-19) (emphasis in original). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Reconciliation of conflicts and contradictions in the evidence is within the province of the fact finder. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The fact finder is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the prosecution has no affirmative duty to "rule out every hypothesis except that of guilt." *Blackman*, 2011 Tex. Crim. App. LEXIS 497 at *19 (quoting *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992)).

*1991 Kubota Tractor*

Arnold was charged with unlawfully appropriating, "by acquiring or otherwise exercising control over, property, to-wit: one 1991 Kubota Model 14310 tractor, of the value of $1500 or more but less than $20,000 from Steven [sic] Smith, agent for Davis Smith & Company, the owner thereof with intent to deprive the owner of the property…." At trial, Stephen Smith, an owner of Davis Smith & Company, testified that he owned a 1991 Kubota tractor and reported it stolen in 2004 to the Duncanville Police Department. The tractor had been at a construction site on Highway 67 in Dallas County. Smith agreed that the model number of the tractor was L-4310. He identified the tractor as his at the insurance company after the tractor had been recovered in 2006. He also examined a picture at trial which included the tractor, along with several other vehicles, and stated that it looked like his tractor. Smith testified that he did not give anyone, especially Arnold, permission to take the tractor.

In April of 2006, the Navarro County Sheriff's Department received a call from a concerned citizen who had seen whole vehicles entering a property and leaving the property in pieces. The citizen was concerned that a "chop shop," a place where stolen vehicles are taken and parted out, was being operated at the property. Richard Fulton, a sergeant with the motor vehicle theft service division of the Texas Department of Public Safety was called in to investigate. Chop shops were Fulton's specialty. Fulton went to the property of Gary Arnold[1] and located a chop shop in the back of the property. Four vehicles were located arranged in a semi-circle and were in the process

---

[1] Donald Ray Arnold's uncle.

of being stripped. Among the vehicles was an orange tractor on which parts were loaded. The tractor was a 1991 Kubota tractor with a serial number of L431072280.[2] After contacting dispatch, which checked the tractor through the Texas Crime Information Center, Fulton was able to determine that the tractor on Gary's property was the tractor reported stolen by Smith. After speaking with several individuals, Fulton suspected Arnold in the theft of the tractor; however, Johnny Arnold[3] told Fulton he bought the tractor from someone at an auction in Rice, Texas.

Gary later stated that Johnny also told him he bought the tractor but did not say from whom he bought it or where he bought it. Gary did not remember how the tractor got to his property, but he denied stealing it. He admitted to using the tractor to dig dirt and move things around but did not ask anyone where the tractor came from. Gary did not remember if Arnold ever borrowed it.

Melanie Worthington, the stepdaughter of Michael Arnold,[4] said that sometime around May of 2005, she saw Arnold in possession of the tractor. She saw him mow the pasture with it and pull the motor or transmission out of a Suburban[5] with it. Arnold told Melanie that he borrowed the tractor from Gary. She believed Arnold because she had seen the tractor at Gary's most of the time. Michael had also seen Arnold in possession of the tractor. At another time, he saw Arnold with a vehicle that had

---

[2] Fulton's entire report was introduced into evidence by Arnold. In the report, this number was stated to be the Product Identification Number. The model number was listed as L4310.

[3] Donald Ray Arnold's cousin and Gary Arnold's son.

[4] Also Donald Ray Arnold's cousin and Gary Arnold's son.

[5] What Melanie testified to regarding this Suburban will be discussed in Arnold's second issue.

belonged to Michael's younger brother and saw his dad, Gary, with the tractor. Michael asked Arnold how he got the vehicle, and Arnold said that he traded the tractor to Gary for the vehicle. To Michael, Arnold's statement implied that Arnold claimed to own the tractor and had the authority to trade it. Arnold had even offered to sell the tractor to Michael, but Michael declined the offer. Fulton's report corroborates Michael's testimony. Further, according to the report, Johnny told Michael that Arnold stole the tractor from Duncanville, not far from Red Bird Mall. Fulton confirmed that the tractor was stolen from a location not far from Red Bird Mall.

Arnold testified and denied stealing the tractor. He stated that Gary brought the tractor to Arnold's house and used it there. Arnold denied ever using the tractor because he said he had a bad back. He also denied trading the tractor for a vehicle.

*Discussion*

Arnold initially contends that the State failed to prove the model number of the tractor as alleged in the indictment, and thus, the evidence was insufficient to show that the tractor recovered was owned by Smith. Arnold seems to be making an argument that there was a variance between the model number alleged and what was proved at trial. There was a difference between what was alleged and what numbers Smith and Fulton testified were identifying numbers. However, when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a "material" variance will render the evidence insufficient. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). A variance is not material if the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare

an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id*. at 248. Here, the indictment sufficiently informed Arnold of the charge against him so that he could prepare an adequate defense. And he prepared an adequate defense, that he did not take the tractor. Further this indictment would not subject Arnold to the risk of being prosecuted later for the same offense. Accordingly, the variance was not material and does not render the evidence insufficient.

Further, Smith testified that he owned a 1991 Kubota tractor, that he reported it stolen, and that he identified the tractor recovered as his tractor. Fulton testified that after checking with dispatch, he confirmed that the tractor recovered from Gary's property was the tractor reported stolen by Smith. Thus, any rational trier of fact could have found that Smith owned the tractor, that it was stolen, and that it was the tractor recovered from Gary's property.

Arnold also contends that the evidence is insufficient to prove that he was the one who initially took the tractor or that he exercised control over the tractor. The State need not prove the accused participated in the initial theft; rather, the State must show only that the accused knowingly exercised control over the stolen property. *Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992); *McClain v. State*, 687 S.W.2d 350, 353 (Tex. Crim. App. 1985; *see also Stewart v. State*, 44 S.W.3d 582, 588 (Tex. Crim. App. 2001) (citing *McClain* for proposition that manner of acquisition is inconsequential for theft). Thus, the lack of proof that Arnold took the tractor does not render the evidence insufficient. Further, Melanie witnessed Arnold use the tractor to mow his pasture and

to lift an engine out of a Suburban. Michael also saw Arnold in possession of the tractor. Additionally, Arnold implied ownership of the tractor when he offered to sell it to Michael and eventually traded it to Gary for a vehicle. *See Rollerson v. State*, 196 S.W.3d 803, 807 (Tex. App.—Texarkana 2006) (holding that the attempted sale of stolen property is "a distinct and conscious assertion of right to the property"), *aff'd*, 227 S.W.3d 718 (Tex. Crim. App. 2007). Although Arnold denied use of or control over the vehicle, a rational trier of fact could have found beyond a reasonable doubt that he exercised control over the tractor.

Finally, Arnold argues that there is no evidence that he intended to deprive Smith of the tractor. Smith testified that he did not give Arnold, or anyone, permission to take the tractor. Michael testified that Arnold tried to sell him the tractor and later traded it to Gary for a vehicle. In his brief, Arnold argues that testimony from Gary, Fulton, Melanie, and Arnold contradicts Michael's testimony. Some does, some does not. Gary did not know how the tractor came to be on his property, Melanie said Arnold borrowed the tractor, Arnold denied ever touching the tractor, and Fulton's report corroborated Michael's testimony. Arnold further argues in his brief that Michael retracted his original statement and admitted that he did not know how the tractor came to be at Gary's property. Arnold provides no citation to the record for this retraction. The only possible retraction could be when asked on cross-examination about who had the tractor, Gary or Arnold, Michael replied that he "couldn't really tell you who had gotten the tractor…." Again, though, based on the evidence, any rational

trier of fact could have found beyond a reasonable doubt that Arnold intended to deprive Smith of the tractor.

*Conclusion*

Accordingly, viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient to support Arnold's conviction for theft of the 1991 Kubota tractor. Arnold's first issue is overruled.

**1984 Chevrolet Suburban**

A day or two after the chop shop was discovered, Fulton received a call from Aubrey Kirk, a police officer from Glenn Heights, who had had a silver 1984 Chevrolet Suburban stolen the year before from his shop where he restored cars as a hobby. Kirk's employee, Michael Arnold, had just received a phone call from Gary Arnold during which Gary accused Michael of turning Gary in to the police. Michael told Kirk that he believed his family was involved in stealing the Suburban. Arnold had been to Kirk's shop before to look at the Suburban when it was for sale. Kirk reported the Suburban stolen in May of 2005.

Fulton was concerned that the Suburban had been parted out and asked Kirk if there was anything unique about the Suburban's drive train. Kirk told Fulton that Kirk had replaced the factory carburetor with an Edelbrook carburetor, that he replaced the factory intake with an aluminum intake, that the valve covers had 350 General Motors written on them, and that he had installed T-post styled quick release valve cover bolts. Michael told Fulton that Arnold had stolen the Suburban and put its drive train in Arnold's Jeep. Michael also told Fulton where to locate the Jeep. When Fulton found

the Jeep where Michael said it was, he looked at the drive train and noticed all the parts that Kirk had described as being unique to his Suburban's drive train: the Edelbrook carburetor, the aluminum intake, the 350 valve covers, and the T-post style quick release bolts. Even the casting number on the engine was the same. On cross-examination, Fulton acknowledged that these parts could be obtained from most parts stores. Fulton emailed Kirk pictures of the drive train, and Kirk confirmed that it was the same drive train as was in his Suburban. Fulton also noticed that the frame of the Jeep had been a General Motors frame and had been cut and welded to fit the Jeep. The body of the Jeep was registered to Arnold.

Randall Threadgill told Fulton that in May of 2005, he had seen a gray Suburban parked in front of Arnold's home. Threadgill asked if Arnold wanted to sell the aluminum wheels that were on the Suburban. Arnold told Threadgill that he was going to keep the wheels and "get rid" of the Suburban. Fulton then remembered that Kirk had told Fulton that Kirk's Suburban had aluminum wheels on it when it was stolen.

One morning in May of 2005, Melanie Worthington saw Arnold using an orange tractor to pull a motor out of a silver or gray '80's model Suburban. She saw Arnold, Gary, and Arnold's nephew, Ben, working on the Suburban at Arnold's house. Melanie said that Arnold told her he needed parts from the Suburban for his Jeep and that Arnold and Gary put $500 down on the Suburban. She stated Arnold also told her that he was going to take the rest of the Suburban for parts. Ben told her that they stole the Suburban from an officer. Melanie said that parts would be taken off the Suburban and put into the Jeep that was parked there as well.

Gary testified on behalf of Arnold and said that the frame for Arnold's Jeep was a Suburban frame that he had bought in 2000 from a man named Greg Martinez. He produced a receipt for a 1984 Suburban. That Suburban did not have a title, and it was red and silver colored. Gary said he never saw a silver Suburban at Arnold's house. He also stated that Michael was the one who put the engine in Arnold's Jeep.

Arnold testified and denied stealing Kirk's Suburban. He also produced a receipt for a motor that he stated he bought at Traders Village. That motor was supposed to go in his Jeep. He stated that Michael put the motor in his Jeep and either Michael or Johnny must have switched the one Arnold bought for the one that was stolen. Arnold also stated that Melanie did not see him working on a Suburban at his house; he claimed they were working on a 1982 Blazer.

*Discussion*

Arnold contends that the evidence is insufficient to prove that he participated in the theft of the Suburban. Again, the State need not prove the accused participated in the initial theft; rather, the State must show only that the accused knowingly exercised control over the stolen property. *Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992); *McClain v. State*, 687 S.W.2d 350, 353 (Tex. Crim. App. 1985; *see also Stewart v. State*, 44 S.W.3d 582, 588 (Tex. Crim. App. 2001). Thus, any lack of proof that Arnold took the Suburban does not render the evidence insufficient.

Arnold also contends that the evidence is insufficient to prove that he exercised control over the Suburban or that he intended to deprive Kirk of the Suburban. Threadgill and Melanie both saw Arnold in possession of a Suburban that matched

descriptions of Kirk's Suburban. Both Threadgill and Melanie were told that the Suburban would be discarded or parted. Further, parts that were unique to Kirk's Suburban were all found in Arnold's Jeep.

*Conclusion*

After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Arnold exercised control over the Suburban and intended to deprive Kirk of the Suburban. Accordingly, Arnold's second issue is overruled.

## CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 28, 2011
Do not publish
[CR25]