Theresa Ellen SCHULTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–93–0085–CR.

Court of Appeals of Texas, Amarillo.

June 27, 1994.

---

Mike Brown, The Brown Law Firm LLP, Lubbock, for Schultz.

Michael West, Asst. Crim. Dist. Atty., Lubbock, for State.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

A jury found appellant Theresa Ellen Schultz guilty of the offense of abandonment of a child, for which the court assessed punishment at confinement in the county jail for twelve months, probated for twenty-four months, and a fine of $500. Appellant contends 1) the information failed to allege any culpable mental state regarding the circumstances surrounding her intentional conduct and, therefore, was insufficient to support a conviction; 2) in its charge, the trial court misdirected the jury by authorizing a conviction without proof of a culpable mental state regarding her intentional conduct; and 3) the evidence is insufficient to support the conviction. We will overrule the points of error and affirm the judgment.

The evidence prompting the prosecution shows that appellant lived in Lubbock with her daughter, Courtney Shultz, age nine, and her sister's child, Matthew White, age eleven, who was in appellant's custody. At noon on 21 September 1991, appellant left the children alone to go to work at Legends, a nightclub. When she finished her shift about seven o'clock in the evening, her employer asked her to stay and participate in a meeting regarding the business development of the nightclub. The meeting lasted until eight-thirty.

At eight-thirty, appellant left Legends and went by the store to purchase a few items for the barbeque planned at Kirk Durham's apartment. Upon reaching Kirk's apartment, appellant found the barbeque would have to be postponed. In lieu of the barbeque, she, Kirk, and Jackie Morgan decided to go to the Silver Bullet, a bar.

Eventually, the three left the Silver Bullet and proceeded to the Villa where Charles "Cooter" Morris, another friend, was employed. From there, the four of them went to The Kettle and had breakfast. After eating, they drove back to Kirk's apartment and appellant proceeded to drive home.

When appellant reached her house around three-thirty a.m., the door was slightly ajar and smoke was coming from the chimney. She appeared at the house of her neighbor, Mickey Taylor, and yelled for him to come help her. Taylor ran from his house into appellant's home and exited with Matthew, who was dead.

Fire department personnel arrived, searched the home for the fire, found it, and proceeded to extinguish it. They found Courtney's dead body in the house. The fire marshall was of the opinion that the fire was started in a bedroom closet area by the children playing with matches.

Section 22.041 of the Texas Penal Code Annotated (Vernon 1989 & Supp.1994), designated as ABANDONING OR ENDANGERING CHILD, provides, in part, that

> A person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm.

Tex. Penal Code Ann. § 22.041(b) (Vernon 1989). "Abandon," as used in the statute, "means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no reasonable, similarly situated adult would

leave a child of that age and ability." Tex. Penal Code Ann. § 22.041(a) (Vernon Supp. 1994).

Following the statute, the State utilized a two-count information, one count for each child, to charge that on 22 September 1991, appellant did intentionally abandon each child. Prior to jury selection, the State, apparently because of an inability to procure records showing appellant's custody of Matthew, elected to proceed on count II, which charged that appellant, "having custody of COURTNEY SHULTZ, a child younger than 15 years, [did] intentionally abandon the said COURTNEY SHULTZ under circumstances that exposed the child to an unreasonable risk of harm."

Initially, on appeal, appellant contends that the information failed to allege any culpable mental state with respect to the circumstances surrounding her intentional conduct and, therefore, is insufficient, as a matter of law, to support the judgment of conviction. She submits that her timely pretrial motion to dismiss the complaint and information clearly suggested the problem, but the State responds that the point of error was not preserved for appellate review. We agree with the State.

Appellant's pretrial motion to dismiss was predicated on her view that the statute and the information under which she was charged were unconstitutionally vague, because the terms "abandon" and "unreasonable risk" were not defined. Pretrial, appellant also moved to quash the information, alleging it was defective because "[n]either count alleges whether Defendant abandoned the child in question with or without the intent to return for the child. Therefore, Defendant is not put on notice of whether she is charged with a Class A misdemeanor or a third degree felony."

█ As is readily apparent, neither motion embraces appellant's first-point contention that the information fails to allege any culpable mental state with respect to the circumstances surrounding her intentional conduct. It is now settled that if a defendant does not object to a defect of form or substance in an information before the date of trial, he waives the right to raise the objection on appeal. Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp.1994). Thus, since appellant's motions made no reference to a culpable mental state, she waived her first-point contention. *State v. Oliver*, 808 S.W.2d 492, 493–94 (Tex.Cr.App.1991). Appellant's first point of error is overruled.

Notwithstanding, appellant preserved her contention for review, which is advanced by her second point of error, by timely objecting to the court's charge. In brief, her objection was that because the offense was a result-oriented crime, the charge erroneously authorized a conviction without requiring any culpable mental state on the element of "under circumstances that expose the child to an unreasonable risk of harm."

█ In pursuing her second-point contention, appellant presents a contention of first impression concerning the culpable mental state required for conviction of the offense of abandoning a child. There is no reported decision construing the statute.

It is appellant's position that abandoning a child is a circumstance-dependent crime; that is, section 22.041(b), *supra*, prohibits conduct only under unreasonably risky circumstances. She reasons that the statutory words "intentionally abandons" are *"vestigial language,"* because the focus is on the state of mind that consciously disregards the circumstances surrounding such conduct. Thus, the offense requires a culpable mental state that relates to the nature of the circumstances surrounding the charged conduct, not to the conduct or the result of the conduct. She suggests a construction of the statute to require at least a showing of recklessness of surrounding circumstances as a condition of guilt for abandonment.

There is no profit in lengthening this opinion to address appellant's analogy of statutes and case law to support her construction of section 22.041(b), *supra*; for, contrary to her diligent effort, we do not consider the statutory words "intentionally abandons" to be rudimentary or nonfunctioning language. Indeed, when we focus on the text of the statute, as we must do to determine the collective legislative intent in enacting the statute with the expectation the judiciary will

follow the text, *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991), we discern it was clear to the Legislature that the conduct to be proscribed was the abandonment of a child younger than 15 years. It was also clear that such conduct was criminalized when a person, having custody of a child younger than 15 years, intentionally abandons the child under any variety of circumstances exposing the child to an unreasonable risk of harm. Thus, by the penal proscription, the Legislature intended to punish specified conduct.

Honoring the principle that the Legislature must be understood to mean what it expressed in a clear and unambiguous statute, *Coit v. State,* 808 S.W.2d 473, 475 (Tex. Cr.App.1991), it follows that the deliberate placing of "intentionally" before "abandons" means that the prescribed culpable mental state is connected with the act of abandonment itself, *i.e.,* the specific conduct the Legislature intended to punish, and a culpable mental state is not, as appellant contends, connected with the circumstances surrounding the conduct. Thus, it seems clear that the Legislature proscribed specific conduct, not specific circumstances. It is not our function to add to or detract from the statute. *Id.* Accordingly, appellant's second point of error is overruled.

In challenging the sufficiency of the evidence to support her conviction, appellant confines her challenge to an argument that the evidence is insufficient to show she was aware of, but consciously disregarded a substantial, unjustifiable, unreasonable risk of the children's death in a fire. Adverting to her first-point contention that the offense requires a culpable mental state that relates to the nature of the circumstances surrounding the conduct, she asserts the law penalizes conscious disregard of a perceived risk, not negligent inadvertence to an unforeseen and unforeseeable danger. Therefore, she offers, since there was no indication of an unreasonable risk of harm to the children during the several telephone calls she made to the children during her absence, no reasonable juror could have found beyond a reasonable doubt that she was aware of, and consciously disre-

garded a substantial, unjustifiable, unreasonable risk of the children's death in a fire.

■ However, because we have determined that a culpable mental state is not associated with the nature of the circumstances surrounding the conduct, appellant's evidentiary challenge is not well-positioned. Nevertheless, we, viewing the evidence in a light most favorable to the verdict, will consider whether any rational trier of fact could have found from the evidence beyond a reasonable doubt that appellant's abandonment of Courtney was under circumstances that exposed the child to an unreasonable risk of harm. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Cr.App.1991).

According to her testimony, appellant called the children frequently while she was at Legends. When she was preparing to leave at eight-thirty p.m., she called Matthew to see if he and Courtney still wanted to attend the barbeque at Durham's apartment. Matthew said that he and Courtney had eaten and would prefer to stay home. At this time, everything seemed normal. Before leaving Durham's apartment to go to the Silver Bullet, she called to check on Matthew and Courtney and, upon reaching the bar, she called them again. She said that about a month before the fire, her ex-husband had threatened to blow up her house, and she took this to be a serious threat. He had managed to get into the house once without a key or being let in by the children.

In its case in chief, the State presented witnesses who testified to the effect that children of the age of 9 and 11 were too young to be left alone for long periods of time because they could not act responsibly for themselves. During appellant's testimony, she admitted that since she had moved into the house, she had not checked the batteries in the smoke detectors.

In rebuttal, the State produced testimony that Matthew was not a very mature child for his age, and he resented that he was often responsible for taking care of Courtney. Appellant's neighbor reported that the children were not well cared for, she saw them "more often alone than not," and once at 11:30 in the evening, her husband saw Matthew, then 9 years of age, alone and quite a distance

from his home at a local McDonald's, wanting something to eat. She said the police had to come to the Shultz home quite often on weekends. She recalled one occasion when the children were locked out of the house, and that on another occasion, the fire department was called when a neighbor's yard was set afire while the children were playing with matches.

A bartender, who worked with appellant at Legends, testified that the children were not well taken care of, that they constantly called her at work, asking, if appellant was not there, when she was coming home and what they were supposed to do, and that when appellant was there and she gave her the phone, appellant "would yell" at the children and "would hang up." She related that appellant was worried about a man trying to get into the house, and every time he came to the house, the children would be terrified. Once, appellant told the children to leave the house and go away so he would not disturb them. The witness knew Courtney liked fire, and Matthew told the witness to "keep matches away from her."

Appellant's insufficient evidence contention is predicated on there being no indication of an unreasonable risk of harm to the children by the telephone calls she made during her absence of more than 15 hours. However, the jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Cr.App.1992), was free to accept or reject all or any part of the testimony of any witness, *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex.Cr.App.1987), to draw other inferences from the evidence, and to reject appellant's self-serving claim of no indication of an unreasonable risk of harm to the children. *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Cr.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

In its role, the jury was privileged to find from the evidence that appellant, aware that the children were too young to be left alone for a long time, left the children unattended for more than 15 hours, particularly knowing that Matthew was not a mature child capable of handling the responsibility of caring for Courtney. The jury could believe that appel-

lant extended her absence, even though she considered her ex-husband's threat to blow up the house was a serious threat, she worried he would try to get into the house, and she knew the children were terrified each time her ex-husband came to the house. By appellant's admission that she had not checked the batteries in the smoke detectors, the jury could infer that she did nothing to protect against the danger presented by Courtney's fondness for playing with matches.

It follows that the evidence, and the inferences permitted to be drawn from it, sufficiently supports a rational finding that appellant's abandonment of Courtney was under circumstances that exposed the child to an unreasonable risk of harm. Being supported by the evidence, the verdict must stand. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Cr.App.1988). Appellant's third point of error is overruled.

The judgment is affirmed.