Theresa Ellen SCHULTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 0864–94.

Court of Criminal Appeals of Texas,
En Banc.

April 17, 1996.

Mike Brown, Lubbock, for appellant.

Michael West, Assist. Dist. Atty., Lubbock, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

KELLER, Judge.

Appellant was charged with the offense of child abandonment under TEX.PEN.CODE ANN., Sec. 22.041(b).[1] Evidence showed that appellant's nine year old daughter and her eleven year old nephew died in a fire after appellant left them alone for fifteen hours. In affirming appellant's conviction, the Court of Appeals held that the culpable mental state under Sec. 22.041(b) is "intentional" and that the mental state attaches to

---

1. All references to sections refer to the Texas Penal Code unless otherwise specified.

**2**

conduct rather than to circumstances surrounding conduct. *Schultz v. State*, 879 S.W.2d 377 (Tex.App.—Amarillo 1994). We granted review to determine the propriety of that determination. We will affirm.

Sec. 22.041 provides, in part:

(a) In this section, "abandon" means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability.

(b) A person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm.

The jury charge in this case tracked the language of the statute. Appellant objected at trial, arguing that the charge erroneously authorized a conviction without requiring any culpable mental state as to the circumstances surrounding the conduct of abandonment.

Essentially, appellant's argument is that the jury charge was erroneous because abandoning a child is not a criminal offense unless the person leaving the child is aware of the risk in doing so and consciously disregards that risk. She reaches this conclusion by means of the following steps: Appellant first claims that "intentionally" in Sec. 22.041 does not prescribe a mental state, but is vestigial language that merely establishes a requirement that conduct be voluntary. She then refers to Sec. 6.02, which states that if the definition of a statute does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental elements. Since, according to appellant, Sec. 22.041 does not prescribe a mental state, the statute falls under the purview of Sec. 6.02, and a mental state of at least recklessness is implied. After determining that a mental state of recklessness attaches to Sec. 22.041, appellant analogizes Sec. 22.041 to similar statutes and to cases involving the result-oriented offense of injury to a child. She concludes her claim by arguing that, comparable to injury to a child, child abandonment is a circumstance-dependant offense that re-

quires a culpable mental state that relates to the nature of the circumstances surrounding the charged conduct, rather than to the conduct itself.

In its opinion, the Court of Appeals focused on the text of the statute and found that the legislative intent behind the statute was clear. *Id.* at 380. They looked at the fact that the Legislature placed "intentionally" directly before "abandons," and concluded that the intent in so doing was to require that the prescribed mental state attach to the act of abandonment itself. *Id.* They held, in other words, that the statute requires that the act of abandonment be intentional, but does not require an additional mental state regarding the circumstances of the offense. *Id.*

 In construing a statute, our duty is to attempt to effectuate the intent of the Legislature in enacting the statute. *Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim. App.1989). If the meaning of the statutory text, when read using established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). It is only when a statute is ambiguous or would lead to absurd results that a court may resort to extratextual factors such as legislative history. *Id.* at 785.

 We agree with the Court of Appeals that, according to the plain language of Sec. 22.041, the fact that "intentionally" immediately precedes "abandons" means that the prescribed mental state is connected with the act of abandonment itself. Had the Legislature intended to require that the actor be aware of the risk of harm, it would have been a simple matter to have included language to that effect. For example, Sec. 22.10, "Leaving a Child in a Vehicle," explicitly requires a mens rea of 'knowing' or 'intentional' for conduct (leaving a child in a vehicle) and also explicitly requires a mens rea of 'knowing' for the circumstances (knowing that the child

is younger than seven years old and not attended by a person fourteen or older.) [2]

Moreover, we presume that "the entire statute is intended to be effective." TEX. GOV'T CODE, Sec. 311.021(2).[3] Subsection (a) of Sec. 22.041 defines "abandon," in part, as leaving a child "under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability." Because no reasonable similarly situated adult would knowingly leave a child under circumstances posing an unreasonable risk of harm, this clause in the definition of "abandon" in subsection (a) would be rendered meaningless by attaching a mental state to the risk of harm clause in subsection (b). Under the appellant's interpretation of the child abandonment statute, the meaning of the statute would not change if the word "abandons" and its special definition in subsection (a) were replaced with the word "leaves." The text of Sec. 22.041, therefore, persuades us that the first premise of appellant's argument must fail, and with it, the conclusions that rest upon that primary hypothesis.[4]

■ One argument remains to be considered. Appellant contends that it would be

---

**2.** Judge Meyers' dissent cites Judge Clinton's concurring opinion in *Lugo–Lugo* for the proposition that a culpable mental state must attach to every element of the offense. *Lugo–Lugo v. State*, 650 S.W.2d 72, 87 (Tex.Crim.App.1983) (Clinton, J. concurring). That proposition has never been adopted by a majority of the Court. Judge Meyers' dissent argues that the *Lugo–Lugo* concurrence provided the blue-print for the other opinions his dissent cites. While these cases indicate that some of the analysis in that concurring opinion may be useful, we disagree with Judge Meyers' apparent belief that the *Lugo–Lugo* concurrence has been adopted wholesale by this Court. *Beggs* precedes *Lugo–Lugo*, and *McQueen* does not cite the *concurring* opinion. *See Beggs v. State*, 597 S.W.2d 375 (Tex.Crim.App.1980). *McQueen v. State*, 781 S.W.2d 600 (Tex.Crim. App.1989). *Alvarado* and *Gardner* merely cite *Lugo–Lugo* for its observation that an offense could be divided into elements of conduct for the purposes of analyzing and distributing the required culpable mental state. *Alvarado v. State*, 704 S.W.2d 36, 38 (Tex.Crim.App.1985). *Gardner v. State*, 780 S.W.2d 259, 262 (Tex.Crim.App. 1989). While *McClain* holds that a culpable mental state must attach to circumstances surrounding the conduct when doing so conforms to clearly expressed legislative intent (citing Committee comment), the opinion does not hold that *all* conduct elements require a mental state unless the legislature expressly dispenses with such. *McClain v. State*, 687 S.W.2d 350, 354 (Tex.Crim. App.1985). As a concurring opinion, *Lugo–Lugo* is not binding precedent.

**3.** This provision is part of the "Code Construction Act" made applicable to the Texas Penal Code by § 1.05(b) which states:

Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of the Code Construction Act (Chapter 311, Government Code), apply to the construction of this code.

**4.** Even if we were to find that the language of Sec. 22.41 is ambiguous, an examination of the legislative history of the statute confirms that the intent of the Legislature was that "intentional" be the culpable mental state, and that it relate to the conduct of abandonment. The bill analysis of S.B. 175, which ultimately became Sec. 22.041, reveals that the bill was intended to remedy the fact that, as the law stood prior to the enactment of the statute, when a child was abandoned by someone with custody of the child, that person could be prosecuted only if the child suffered injury or death. One of the witnesses who testified in favor of the bill at the hearing on S.B. 175 told the committee he favored the bill because:

The juvenile division of the Houston Police Department has noted multiple cases of child abandonment and endangerment, including infants left in fields and trash dumpsters and young children left unattended in filthy apartments for several weeks.

Until S.B. 175 rectified the problem, the conduct described above did not constitute a criminal act. An unidentified member of the committee stated his understanding of the statute as follows:

UNIDENTIFIED COMMITTEE MEMBER # 1: Well, as I read this bill, if you went off and left two three-year olds in the house with open flame heaters in the cold wintertime, if you intended to leave them half the night, you have abandoned them in circumstances that would endanger their well-being. And I think it would fit in this category. I mean, you can abandon someone immediately, you know.

. . . . .

MR. JOHNSON: I believe that endangerment could apply to that circumstance, because the children are left in a dangerous circumstance . . . .

Although the above exchange appears to have been, at least by one speaker, a reference to the offense of child endangerment rather than child abandonment, the fact remains that the conduct described was meant to be criminalized without regard to the offender's awareness of danger. The intent of the actor in the above illustration was "to leave them half the night." No mention is made of the actor's awareness of the danger; the act is criminal "because the children are left in a dangerous circumstance."

contrary to the common law tradition to penalize one who acts without being conscious of an unreasonable risk. In making this argument, appellant claims that child abandonment is a circumstance-dependant offense, and analogizes it to result-oriented offenses such as injury to a child. She refers us to the line of cases including *Beggs, Alvarado*, and *Haggins v. State*, 785 S.W.2d 827 (Tex.Crim.App.1990). Result-oriented offenses require specific mental culpability beyond intentional conduct. Therefore, appellant argues, circumstance-dependant offenses also require specific mental culpability beyond intentional conduct. By analogizing her case to *Beggs* appellant asks us, in effect, to consider whether it is right to punish one for an act that is done without awareness of the risk associated with the act.

In *Beggs* this Court held that in a trial for injury to a child, the jury must be instructed that they cannot find the defendant guilty unless they find that he intended the result of his conduct. In other words, injuring a child is not a criminal act unless the actor intended to cause the injury.

*Beggs* was a prosecution for injury to a child under Sec. 22.04(a). In that case, the defendant was charged with injuring her granddaughter by placing her in a tub of hot bathwater. The defendant claimed that she did not know the water was hot enough to injure the child, as the child's mother had drawn the bath. Because the jury instructions allowed the jury to convict the defendant if they found only that she intended to place the child in the hot water, regardless of whether she intended the resulting injury, the conviction was reversed. This Court determined that the focus of Sec. 22.04 was the

harm which the statute sought to prevent, rather than the nature of the suspect's conduct. That is, the Legislature did not intend to criminalize behavior that was, in itself, innocent, e.g., placing a baby in the bath.

There are two significant differences between injury to a child under Sec. 22.04(a) and child abandonment under Sec. 22.041. One is that conduct that is criminalized under Sec. 22.041 is *per se* dangerous. The statute makes this so by defining "abandon" as leaving a child under circumstances under which no reasonable, similarly situated adult would do so, that is, in dangerous circumstances. The problem that arose in *Beggs*—the possibility of convicting a person for entirely innocuous behavior—does not arise in prosecutions under Sec. 22.041.[5]

The other fundamental distinction between Sec. 22.04(a) and Sec. 22.041 is that the latter applies only to those who have custody, care, or control of the child victim. Sec. 22.041 imposes a duty upon those responsible for children to refrain from unreasonably subjecting the child to danger. There is no corollary duty under Sec. 22.04(a). Unlike Sec. 22.04(a), Sec. 22.041 can dispense with a requirement of awareness of danger because a person subject to Sec. 22.041 has already assumed the responsibility to act reasonably with regard to the child's safety. It is the neglect of this duty that is criminalized under Sec. 22.041(b).[6]

The judgment is affirmed.

MALONEY and MANSFIELD, JJ., concur with note: I concur in the judgment of the Court, believing that proof of intentional abandonment as defined by the statute, with-

---

**5.** Judge Meyers' reliance upon *McClain v. State*, 687 S.W.2d 350 (Tex.Crim.App.1985) and *McQueen v. State*, 781 S.W.2d 600 (Tex.Crim.App.1989) is misplaced for this very reason. As we stated in *McQueen*, "[W]here *otherwise innocent* behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances." 781 S.W.2d at 603 (emphasis added). Judge Meyers believes that "otherwise innocent" behavior merely means non-criminal behavior. However, *McQueen* explained that attaching a culpable mental state was necessary to effectuate the legislature's intent to prevent strict liability offenses. *Id.* at 604.

**6.** Appellant mistakenly believes that this interpretation of the statute punishes her actions without regard to the surrounding circumstances. On the contrary, by intentionally "abandoning" a child, the actor does more than merely intentionally "leave" the child. The actor intentionally leaves the child *under a certain set of objectively unreasonable circumstances* outlined in the definition of "abandons." This construction appears designed to punish actors who are aware of the dangerous circumstances even though, due to shortsightedness, lack of common sense, apathy, or just plain stupidity, they may not be aware that the circumstances are dangerous.

out requiring proof of an additional mens rea, is all that is necessary to sustain a conviction under Tex.Penal Code Ann. § 22.041(b).

CLINTON, Judge, dissenting.

Joining Judge Meyers in his adherence to analytical treatment in my concurring opinion in *Lugo–Lugo v. State*, 650 S.W.2d 72, at 85 ff (Tex.Cr.App.1983), of principles of criminal responsibility provided in Chapter Six of the "new" Penal Code, I write first to "set the stage," secondly to address the rationale expressed by the court of appeals and finally to critique certain notions espoused by the majority.

I

For "conduct" to constitute an offense it must first be defined as an offense by an authorized governmental entity. V.T.C.A. Penal Code, § 1.03(a). A person commits an offense only if he voluntarily engages in conduct with one or more requisite culpable mental states ordinarily prescribed in the definition of the offense. *Id.*, § 6.02(a). Indeed appropriate culpable mental states are always required unless the definition of the offense plainly dispenses with any mental element. *Id.*, § 6.02(b).

In the instant cause the proscribed offense is statutorily defined as follows:

"A person commits an offense if, having custody, care, or control of a child younger than 15 years, he *intentionally* abandons the child in any place *under circumstances that expose the child to an unreasonable risk of harm.*"

V.T.C.A. Penal Code, § 22.041(b).[1] The information alleged the offense substantially in those terms. *Schultz v. State*, 879 S.W.2d 377, at 379 (Tex.App.—Amarillo 1994).

II

A

In rejecting appellant's "contention of first impression concerning the culpable mental state required for conviction of the offense of abandoning a child," the court of appeals disdained her "analogy of statutes and caselaw" to focus on the text of the statute itself. *Schultz v. State*, supra, at 379–380. It discerned that conduct the Legislature clearly proscribed is "the abandonment of a child younger than 15 years," and that such conduct was "criminalized" when a person having custody of such child "intentionally abandons the child under any variety of circumstances exposing the child to an unreasonable risk of harm," thus evidencing a legislative purpose "to punish specified conduct." *Id.*, at 380. The court of appeals believed "that the deliberate placing of 'intentionally' before 'abandons' means that the prescribed culpable mental state is connected with the act of abandonment itself, i.e., the specific conduct the Legislature intended to punish, and a culpable mental state is not, as appellant contends, connected with the circumstances surrounding the conduct." *Ibid.* Concluding, the court of appeals iterated, "[I]t seems clear that the Legislature proscribed specific conduct, not specific circumstances." *Ibid.*

---

1. Originally, Section 22.041(a) defined "abandon" to mean "to leave a child in any place *without intent to return for the child and* without providing reasonable and necessary care for the child, under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability." See Acts 1985, 69th Leg., Ch. 791, p. 2703, § 1, effective September 1, 1985 (S.B. No. 175).

Subsequently, the Legislature amended certain subsections of Section 22.041. *Inter alia*, it deleted the clause underscored just above, and made an offense under subsection (b) a Class A misdemeanor if accused abandoned the child *with intent to return* for the child; a felony of the third degree if accused abandoned *without intent to return for the child.* Acts 1989, 71st Leg., Ch.

748, p. 3932, § 1, effective September 1, 1989 (S.B. No. 748).

As thus amended subsection (a) purports only to define a term for purposes of the section rather than to prescribe an offense; it does, however, contemplate as a defining ingredient "circumstances surrounding conduct."

The instant offense is alleged to have been committed September 22, 1991, and is therefore governed by S.B. No. 748. See Acts 1993, 73rd Leg., Ch. 900, Article 1, § 22.041, p. 3623; §§ 1.18 & 1.19, p. 8705 (offense committed before effective date covered by law in effect when committed).

(All statutes cited are to V.T.C.A. Penal Code and all emphasis is mine unless otherwise indicated.)

## B

What may seem clear to the court of appeals, however, was not all that certain to managers of the original legislation. Resorting to the record of legislative history the State finds "some concern over the scope of the intended legislation" and over "the need to define 'abandonment.'" State's Reply Brief at 7, citing Supp.R. p. 12 and its own appendix of pertinent papers.

In the Committee Substitute for S.B. No. 175, Subsection 22.041(a) defined the term thusly:

> "In this section 'abandon' means to leave a child in any place without intent to return for the child and without providing reasonable and necessary care for the child."

Standing alone that definition describes "nature of conduct," and if denounced by statute the putative culpable mental states would be "intentionally" and "knowingly." See § 6.03, (a) and (b). Concern on the House side, however, prompted the Committee on Criminal Jurisprudence and subsequently the Legislature to add another component, *viz:* "under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability." That addition to the definition incorporates "circumstances surrounding conduct." Thus as a *definitional matter* the clear legislative intent was that to leave a child in a place without providing reasonable and necessary care would constitute "abandonment" *only* where the circumstances then and there extant were such that no reasonable, similarly situated adult would have done so. Section 22.041(a).

Similarly, while under § 22.041(b) to "intentionally abandon" a child may be considered "specified conduct," *Schultz v. State,* supra, at 380, without more such conduct alone does not constitute the whole of "forbidden conduct" denounced by the statute. The custodian who acts with a conscious objective or desire to leave the child, where no reasonable similarly situated adult would have, does not *ipso facto* commit the offense of abandonment. The alleged abandonment must be "under circumstances that expose the child to an unreasonable risk of harm"—again, "circumstances surrounding conduct."

It is axiomatic that one cannot intend circumstances surrounding one's own conduct. A person may act intentionally, or with intent, only with respect to the nature and result of his conduct. But with respect to circumstances surrounding conduct one must act knowingly or recklessly. The court of appeals erred in concluding that because the Legislature prescribed the culpable mental state of "intentionally" in connection with the "specific" act of abandonment, a culpable mental state was not required for circumstances surrounding conduct that allegedly exposed the child to an unreasonable risk of harm. See *post.*

## III

The majority essentially accepts the theory formulated by the court of appeals, and invokes the hoary, hollow dictum that if the Legislature intended an additional culpable mental state, "it would have been a simple matter to have included language to that effect." Opinion, at 3. But to guard against resort to just such evasions and voids, the Legislature laid down rules seeking to guarantee that a person is not convicted of an offense without the existence and proof of the requisite culpability. See Part I, *ante.* The very discussion in which we are now engaged demonstrates that resolution of the matters at issue is not all that simple.

In like vein, the majority says, "[T]he proposition that a culpable mental state must attach to every element of the offense ... has never been adopted by a majority of the Court." Opinion, at 3, n. 2. In point of fact, the problem more frequently encountered in criminal cases is the ambiguity about to which elements of an offense a given culpable mental state applies. The proposed solution early on would have attached the same alleged culpable mental state to each element of the offense even though it did not syntactically modify the element language. But it was rejected, so in too many situations the proper relationship between culpable mental states and various prescribed elements of offenses remain ambiguous. See Practice Commentary to § 6.02 and § 8.02, V.T.C.A.

Penal Code (1974), at 83 and 213, respectively. Consequently, in practice, we are obliged to resolve the problem on a case-by-case basis, and Judge Meyers has demonstrated that the Court has shown sensitivity to the "Lugo–Lugo proposition" that *"generally,* some genre of culpability is required for each element of conduct[.]" *Id.,* at 87 (Emphasis in original).[2]

Finally, at first blush it might appear, as a matter of craftsmanship, that the legislative managers unwittingly created a conundrum by adding a "surrounding circumstance" ingredient *to the definition of "abandon"* in subsection (a), yet retaining the "surrounding circumstances" element in subsection (b). Certainly, the majority is moved to cry havoc. Opinion, at 3 (clause in definition rendered *meaningless by imposing culpable* mental state to risk of harm clause in subsection (b)). But closer analysis and reflection reveal they acquitted themselves in that respect.

A definition, of course, simply describes a term germane to an offense; it does not purport to proscribe conduct, which is to be separately and explicitly denounced as an offense. So here, to define "abandon" as *leaving* a child in any place "under circumstances under which no reasonable, similarly situated person would *leave* a child of that age and ability" is to invoke an objective test, the hypothetical ordinary prudent person. Compare definition of "reasonable belief" in § 1.07(a)(42). Thus, *leaving* a child constitutes *abandoning* the child if a reasonably prudent person would not have left the child.

Yet, abandoning a child is not criminal conduct even though the actor harbors a conscious objective or desire to do so, i.e., "intentionally." There is still no offense unless contemporaneously surrounding circumstances "expose the child to an *unreasonable* risk of harm."

To require a showing that the actor be aware of circumstances creating an unreasonable risk of harm in no way impinges upon prior discrete underlying determinations that leaving the child constitutes intentional abandonment. The two seem compatible. If *not,* as an element of the offense, the former would trump the latter.

Because in my judgment the majority opinion is an exercise in affirmance, thereby continuing recognized difficulty in construction and candidly acknowledged confusion in application of most crucial statutes governing culpability for alleged criminal behavior, I respectfully dissent.

BAIRD and OVERSTREET, JJ., join.

MEYERS, Judge, dissenting.

What disturbs me most about the Court's lead opinion is the ease with which it disregards *Lugo–Lugo v. State,* 650 S.W.2d 72 (Tex.Crim.App.1983) (Clinton, J., concurring)[1], and its progeny, especially since the principles articulated in those cases control the issue in dispute today.

In order to convict an individual of a charged offense, the state must prove all components of that offense. Offenses vary in

---

**2.** Arguably, there may be an alternative theory if one is inclined to justify further the result reached by the majority.

 In this cause that part of the substantive statute prescribing the instant offense allegedly committed by appellant requires solely the culpable mental state of "intentionally" with respect to *the nature of her conduct or to the result of her* conduct. Surely it cannot be gainsaid that to "intentionally abandon" as defined and proscribed contemplates "nature of conduct"—a conscious objective or desire to "abandon" her children.

 What then of "surrounding circumstances" plainly considered by the Legislature to be a telling factor under § 22.041(b)? The answer must be that since the Legislature did not see fit to require a separate culpable mental state such as "knowingly" or "recklessly" as described in

§ 6.03(c), with respect to "circumstances," it expected the other facet of "intentionally"—"cause the result"—would apply to the consequences of "exposing the child[ren] to an unreasonable risk of harm." § 22.041(b).

 Whether that is a viable theory is left for others to determine, but it seems to me that the bench and bar are entitled to a more definitive explication of the relationship between "intentional abandonment" and "surrounding circumstances."

**1.** Although a concurring opinion, *Lugo–Lugo* provided the blue-print that informed all of the subsequent majority opinions cited within this opinion. Thus, the premises of *Lugo–Lugo* have been adopted as a rule of law in this State.

that some require only specific, proscribed conduct for culpability, while others demand that certain circumstances surround, or specific results flow, from that conduct. Still others require the existence of all such elements before the state can obtain a conviction. *See generally Lugo–Lugo v. State,* 650 S.W.2d 72 (Tex.Crim.App.1983) (Clinton, J., concurring).

And yet, guilt does not flow solely from these physical components of behavior. Indeed, unless clear language exists to the contrary, the state must also show that the accused had a culpable mental state when she committed the actions that comprise any particular offense. *Braxton v. State,* 528 S.W.2d 844, 846 (Tex.Crim.App.1975). The existence of this mental state is so central to the idea of ultimate culpability that

> [i]f the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

TEX.PENAL CODE § 6.02(b).

It is not enough, however, that the culpable mental state attach to only one element of the offense. Instead, as Judge Clinton stated in *Lugo–Lugo,* 650 S.W.2d at 87 (Tex. Crim.App.1983), each element of conduct requires "some genre of culpability." His *Lugo–Lugo* concurrence identified the parts of an offense as the "nature of conduct," the "circumstances surrounding conduct," and the "result of conduct." *Id.* at 86. These "elements of conduct" were gleaned from TEX.PENAL CODE § 6.03, which defines the culpable mental states applicable to offenses under our law. *See Lugo–Lugo,* 650 S.W.2d at 86 n. 1.

The *Lugo–Lugo* concurrence found that the "result of conduct" in the statute proscribing murder did not require a lesser culpable mental state than intent. *Id.* at 89. *See* TEX.PENAL CODE § 19.02(a)(2). Thus, the word "intending" in that statute could legitimately modify and provide the culpable mental state for both the "nature of conduct" and the "result of conduct" such that the indictment underlying the appellant's conviction was "fundamentally sufficient to support a conviction." *Id.*

Similarly, in *Alvarado v. State,* 704 S.W.2d 36, 40 (Tex.Crim.App.1985), this Court addressed the "result of conduct" element, stating that the jury could not convict the appellant under TEX.PENAL CODE § 22.04, the statute prohibiting injury to a child, elderly or disabled individual, merely upon a showing that she knowingly or intentionally placed her child in "a tub of hot water." Instead, emphasizing that the "result of conduct," and not the "nature of conduct," constitutes the core of § 22.04, this court required that the culpable mental state (knowingly or intentionally) extend to the "result of conduct." *Id.* at 39–40. *See also Beggs v. State,* 597 S.W.2d 375, 377 (Tex.Crim.App.1980).

Although the instant case, unlike *Lugo–Lugo* and *Alvarado,* deals not with the "result of conduct," but rather with the "circumstances surrounding conduct," the principles of *Lugo–Lugo* and *Alvarado* still apply:

> Obviously, circumstances surrounding conduct could make an otherwise benign act dangerous. Thus, if we were to determine the phrase in issue is a 'circumstance surrounding the conduct,' an additional culpable mental state as to that 'conduct element' would be required.

*Lugo–Lugo,* 650 S.W.2d at 88. In fact, in *McClain v. State,* 687 S.W.2d 350, 354 (Tex. Crim.App.1985) this court held that TEX.PENAL CODE § 31.03, proscribing theft, required "proof of the actor's knowledge of [the] 'circumstances surrounding conduct.'" Thus, § 31.03 demands not only that the appellant appropriate property without the owner's effective consent, but also that he *know* that the owner did not consent. We reiterated this point in *McQueen v. State,* 781 S.W.2d 600 (Tex.Crim.App.1989), when we held that the culpable mental state of "knowingly" must apply to the surrounding circumstances in the statute prohibiting the unauthorized use of a motor vehicle. *See* TEX.PENAL CODE § 31.07; *Gardner v. State,* 780 S.W.2d 259, 263 (Tex.Crim.App.1989).

That said, TEX.PENAL CODE § 22.041(b), the statute at issue in this case, states:

> A person commits an offense if, having custody, care, or control of a child younger

than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm.

The above statute, proscribing child abandonment under "circumstances that expose the child to an unreasonable risk of harm," does not designate a culpable mental state to these circumstances. When an offense does not assign a culpable mental state for a particular element of the offense, TEX.PENAL CODE § 6.02(c) provides that intent, knowledge, or recklessness suffices to establish criminal responsibility. The "intentionally" that precedes "abandons" in § 22.041(b) cannot be imputed to the circumstances surrounding abandonment, as "... a person [cannot] 'intend' 'circumstances surrounding [her] conduct.'" *Lugo–Lugo*, 650 S.W.2d at 87. It follows that the State must prove knowledge or, at a minimum, recklessness, as to the circumstances surrounding the abandonment of a child, in order to convict a person under § 22.041(b). Accordingly, in the instant cause, the trial judge should have included an explicit direction on the culpable mental states properly associated with *each* element of conduct within § 22.041(b), including the "circumstances surrounding conduct."

I will admit that the application of *McClain* and *McQueen* to § 22.041 is less than straightforward. The reason is that the statute contains two different sets of circumstances, one in the definition of the offense itself (*See* § 22.041(b) above) and one in the definition of "abandon" (§ 22.041(a)):

(a) In this section, "abandon" means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no

reasonable, similarly situated adult would leave a child of that age and ability.

TEX.PENAL CODE § 22.041 thus provides a "dangerous" set of circumstances in § 22.041(b) and a set of circumstances properly characterized as "unreasonable" in § 22.041(a).[2] The Court attempts to equate "dangerous" with "unreasonable."[3] It may, however, want to consult a dictionary before creating this new set of synonyms. Unreasonable circumstances are sometimes, but certainly not always, dangerous. For example, it may be unreasonable to leave a ten year old child with his twenty year old sister at her college dormitory, where she and her friends are discussing how they intend to carry out a crime they have been planning. But, however morally bothersome one may believe such circumstances to be, they can hardly be deemed dangerous.

The Court, however, may only intend to assert that the circumstance clause in § 22.041(b) is a *subset* of that in § 22.041(a), in that dangerous circumstances, as described in § 22.041(b), will always also constitute unreasonable circumstances, as described in § 22.041(a). Because of this, and as the Court correctly notes, I do not believe that the meaning and effect of § 22.041 would be any different had the legislature used the word "leaves" in § 22.041(b) as opposed to "abandons."[4] The Court, however, believes that "abandon" has a special meaning in that it proposes a certain set of "objectively unreasonable circumstances." Although correct in this assertion (i.e: the "unreasonableness" of the circumstances does *not* result from whether any given defendant thought they were unreasonable, but, rather, from a sense of whether the hypothetical reasonable person would have

---

2. I characterize the circumstances in § 22.041(a) as unreasonable because they are circumstances under which no similarly situated *reasonable* adult would leave a child.

3. I am specifically referring to the sentence, "[t]he statute makes this so by defining 'abandon' as leaving a child under circumstances under which no reasonable, similarly situated adult would do so, *that is, in dangerous circumstances*" (emphasis added). Perhaps the Court meant "for example" as opposed to "that is." *See* Majority op. at 4.

4. If my interpretation of the statute renders portions of the definition of "abandonment" redundant, then so be it. *See* TEX.GOV'T.CODE § 311.021(2). I can only emphasize that the Court's all inclusive interpretation only gains credibility if they effectively interpret § 22.041(a) as *plainly* dispensing with the culpable mental state that must otherwise necessarily attach to the dangerous circumstances surrounding the abandonment in § 22.041(b). TEX.PENAL CODE § 6.02(b). As explained below, merely characterizing the circumstances in § 22.041(a) as "objectively unreasonable" in no way dispenses with this necessary culpable mental state.

deemed those circumstances unreasonable), the Court never explains why it makes a difference. In fact, when referring to "circumstances surrounding conduct," the tenets of *Lugo–Lugo* and its progeny apply only to objective circumstances. For example, an application of the principles in *Lugo–Lugo* would make no sense if the child abandonment statute read, in its entirety:

> A person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child under any circumstances he believes are unreasonable.

Although one may not be able to imagine such a statute, the point still remains the same: Merely identifying circumstances as "objectively unreasonable" in no way changes the fact that, pursuant to the principles articulated in *Lugo–Lugo* and later reiterated by this Court in numerous majority opinions, a culpable mental state *must* attach to those circumstances, unless *plainly* dispensed with by the statute. Thus, the trial judge in the instant case should have directed jurors as to the appropriate culpable mental necessary for all the elements of conduct in TEX.PENAL CODE § 22.041, including the "circumstances surrounding conduct."

The Court cannot circumvent the requirements of *Lugo–Lugo* and its progeny, specifically *McQueen* and *McClain*, by concluding that "according to the plain language of § 22.041, the fact that 'intentionally' immediately precedes 'abandons' means that the prescribed mental state is connected with the act of abandonment itself." Majority op. at 2–3. As this Court stated in *McQueen*, a conviction under § 31.07, the statute at issue in that case, requires not only that a defendant knowingly operate another's motor vehicle without the owner's consent, but also that the defendant know she lacked the owner's consent, *despite* the fact that the culpable mental state does not "syntactically modify the circumstances surrounding conduct but instead precedes the act of operating a vehicle." *McQueen*, 781 S.W.2d at 603–04.

Nor can the Court distinguish *McQueen* by implying that child abandonment, in and of itself, constitutes *non-innocent* behavior. In *McQueen*, this Court stated that a culpable mental state need only attach to the "circumstances surrounding conduct" when "otherwise innocent behavior becomes criminal because of the circumstances under which it is done ..." *McQueen*, 781 S.W.2d at 603. According to the Court, the abandonment of a child is *non-innocent* behavior and, thus, no culpable mental state need attach to the dangerous circumstances surrounding that behavior. Since I interpret "innocent" to mean behavior that is not criminal, I am puzzled as to why the Court thinks the intentional abandonment of a child is anything other than innocent. The intentional abandonment of a child, in and of itself, is not labelled a "crime." Thus, it is *not* a crime. TEX.PENAL CODE § 1.03(a). In fact, culpability only attaches to the intentional abandonment of a child when the child is abandoned "under circumstances that expose the child to an unreasonable risk of harm." TEX.PENAL CODE § 22.041(b). Thus, in § 22.041(b), innocent behavior becomes criminal via the circumstances under which that behavior occurs and *McQueen* applies with full effect.

Finally, in the instant case, the Court relies heavily upon legislative history in vigorously arguing that the legislature intended to punish only the specific conduct of abandonment. As the Court correctly asserts, the legislative history indicates that the legislature wanted to punish the abandonment of a child even when that abandonment does not lead to the death or injury of the child. However, a reading of § 22.041(b) that demands a culpable mental state for both the abandonment of a child and the dangerous circumstances surrounding that abandonment is consistent with the supposed intent of the legislature to prohibit action other than that leading to the death, injury or serious illness of the child. This understanding of § 22.041(b) prohibits the behavior of an individual when that person intentionally leaves her child alone *and* is aware of, but consciously disregards, an unreasonable risk of harm to that child, *regardless* of whether the child is injured in any way from the abandonment.

Unlike the Court, I do not think the legislative history addresses the pertinent inquiry

in this case: Whether, given that certain circumstances must exist in order to constitute an offense under § 22.041(b), the statute requires a culpable mental state as to those circumstances.[5] While I am impressed with the Court's spirited dedication to ensuring that we effectuate the intent of the legislature, the intent of the legislature in this instance is simply unclear. In this regard, I suggest that the Court redirect its energy toward assuring that a culpable mental state attach to the circumstances surrounding the intentional abandonment of a child unless plainly dispensed with by § 22.041 since, unlike that of the legislature, the intent of this Court in both *McClain* and *McQueen* remains clear.

The Court's failure to effectively confront these controlling cases is disappointing. Lawyers and judges depend on this Court to clarify the criminal law of this State. Plurality opinions like this one, because they are "of limited precedential value," are always a poor vehicle in this regard. *Farris v. State*, 819 S.W.2d 490, 502 n. 3 (Tex.Crim.App. 1990). But when the Court also fails to meaningfully distinguish the case before it from the numerous majority opinions forming a decisive body of case law in this area, the disservice to bench and bar is especially egregious.

With these comments, I dissent.

---

**5.** The Court's attempt to reveal the legislature's intent via legislative history seems to deal *not* with child abandonment, but with child endan-

germent, as the Court itself notes. *See* Majority op. at 3–4 n. 4